ARONSON *v.* FLECKENSTEIN and others.[1]

*(Circuit Court, N. D. Illinois.    July 6, 1886.)*

1. COPYRIGHT—DRAMATIC COMPOSITION—IMITATION PROHIBITED BY INJUNCTION.
     An original operetta, consisting of libretto, score, and name, is property at common law, which, so far as unpublished, will be protected from fraudulent imitation by injunction.
2. SAME—DRAMATIC COMPOSITION—WHAT IS ORIGINAL COMPOSITION.
     An operetta may be so far an original dramatic composition as to entitle it to protection as literary property, although it is an adaptation of an old play.
3. SAME—WHAT IS PUBLICATION OF NAME OF.
     Publication of the songs and vocal score of an operetta, with the name of the operetta, does not make such name public property.
4. SAME—PARTY TO BRING SUIT FOR INFRINGEMENT.
     Suit for protection of property at common law in a dramatic composition *e. g.,* an operetta, can be brought only by the licensee of a general owner, where such licensee has an exclusive license for a definite period, and, by the terms of his license, is to bring all suits for the protection of his rights.
5. SAME—PART OWNER MAY SUE FOR INFRINGEMENT.
     A part owner of a dramatic composition may protect his property by suit against a wrong-doer.

In Chancery.

[1] Edited by Russell H. Curtis, of the Chicago bar.

*Flower, Remy & Gregory,* for complainant.
*E. A. Otis* and *Frank F. Reed,* for defendants.

BLODGETT, J. The bill in this case prays an injunction restraining defendants from producing, at the New Casino theater, in this city, the operetta of Erminie, and alleges, in substance, that in March, 1886, complainant acquired from Harry Poulton, Willie Edouin, and Frank Sanger the sole and exclusive right to produce in the United States and Canada the operetta known as Erminie; that he has, at great expense for advertising, scenery, etc., produced the operetta at the Casino, in New York, where it has met with great success; that prior to its purchase by complainant said operetta was the sole and exclusive property of Poulton; that the same was by him composed and written, and has never been published, nor in any manner dedicated to the public; that in April last complainant caused the title or name of Erminie, as applied to said operetta, to be copyrighted in the office of the librarian of congress, in pursuance of the laws of the United States; that defendants, in violation of complainant's rights, have advertised to produce, and have produced, at a place of amusement in this city called the New Casino, the operetta of Erminie, announcing it as the "latest New York success, playing at the Casino, New York, and Avenue Theater, London, to crowded houses," etc. "This is the first production of Erminie outside of New York city," etc.

The proof from the affidavits on file shows that, under the management of defendants Fleckenstein & Gunning, there was produced, on the twenty-sixth of June last, and has daily been played since that time, at the place of amusement in this city known as the New Casino, an operetta by the name and title of Erminie; that before its production, and before notice was served by complainant on the managers, it was announced and extensively advertised by the defendants' managers of the New Casino that they would, on the twenty-sixth of June, produce at the New Casino "New York's latest success, Erminie," and I can have no doubt but that defendants intended to make the public believe that the operetta to be produced by them was the same as the one by the same title which had been produced, under complainant's management, at the Casino, in New York city, where it had met with signal success and public approval. After being notified by complainant that he had the sole right to produce Erminie or authorize its production in this country, and that legal steps would be taken to prevent interference with his rights, the defendants' managers of the New Casino have modified their placards and advertisements by omitting all allusions to the New York operetta, but they still continue to play substantially the same piece, by the same title.

It is admitted that before complainant acquired the right to the piece in this country the songs and vocal score had been published

and put on sale, in England and the United States, with the consent and knowledge of the owners of the composition; but it is insisted, and the affidavits filed show, that the orchestration and orchestra parts and libretto of the operetta have never been published.

Defendants insist, and their affidavits tend to show, that their operetta of Erminie, as played at the New Casino, is an original and new composition, the libretto of which was written by Fred. Dickson; that they have adopted, as they lawfully might, the songs and vocal score of Erminie, the music of which was by Jacobowsky; and that their orchestration and orchestra parts were wholly written and composed by Profs. Hoffman and Wheeler, of this city; and that the orchestration and orchestra parts are not copied from, and do not follow or imitate, the corresponding parts of complainant's operetta.

It must, I think, be considered as proven that the complainant's operetta is founded upon the old and well-known drama of Robert Macaire; but the title, dialogue, minor characters, scenery, and dramatic situations, which, with the orchestration, orchestra parts, songs, and music, make up the operetta, seem to be so far different as to entitle the piece, as a whole, to the claim of originality, and it is admitted by defendants that Mr. Dickson, the author of their libretto, has taken his piece almost wholly from the same old play. So far as I have had time to compare the two librettos, the defendants' piece seems to me to betray an attempt to avoid copying the Poulton libretto; but many of the situations, and much of the dialogue, and the traits developed by his characters, would seem to indicate, or suggest, at least, that his arrangement is modeled upon Poulton's.

Defendants contend (1) that they have the same right as Poulton to write an operetta founded upon the story and incidents of Robert Macaire, and that they have not copied or adopted the Poulton composition; (2) that, by the publication of the songs and vocal score of the Poulton operetta, with the title of the operetta, the title has become public property.

I think the proof now before the court shows that the name "Erminie," as applied to an operetta, originated with the authors of complainant's operetta; and that, by the publication of the songs and vocal score of the operetta, they have not given to the public the right to use the name as applied to any other libretto, dialogue, and orchestra parts; that the publication of the songs only gave to the public that which was published, and does not authorize the use of the name as applied to the operetta as a whole.

The case, as now made by the proof, shows an attempt by defendants to avail themselves of the reputation and popularity which has been achieved by the operetta of Erminie, as exclusively owned and produced by complainant, by bringing out a piece with the same name and songs, but with colorable changes in the text of the dialogue and dramatic arrangement. The Poulton operetta, with the name of Erminie, being so far an original composition as to entitle it to protec-

tion as a piece of literary property, the name given the composition by its author, and under which it has become known to the public, became, as it seems to me, a property right,—not strictly on the principle of a trade-mark, but because the name and literary composition became blended and united, so that the name identifies the composition to the public,—so that the name of this composition belongs to this complainant as identifying and describing his literary property, and as a part of the piece itself, and defendants have no right to profit by using this name to the injury of complainant.

The law is now too well settled to require the citation of authorities, that the playing of a dramatic composition is not such a publication as makes the composition public property; and I think it equally clear that an author who has given a particular title or name to his composition is entitled to have that name protected. The proof shows that complainant has put his play before the public in New York city, and that it has there met with such approval as makes it probable, if not certain, that the piece will have a successful run in the other cities and towns of this country; and defendants have no right to avail themselves of the merits and popularity of complainant's play to draw audiences to the performance of theirs, even if, as is claimed, their composition is a new and original dramatic arrangement. It is a fraud upon the public, as well as upon the complainant, to attempt to do so.

I do not deem it necessary, for the purposes of this motion, to consider whether complainant has acquired any additional right to the name of his piece by registering the title with the librarian of congress under the copyright laws of the United States, as I think his common-law right to the name is sufficient for his protection. Nor do the merits of the respective compositions enter into the question now before me. For aught I know, or am at present advised, the defendants' piece may be the most meritorious of the two, as a literary and musical composition; but the palpable fact now before me, by the proof, is that the defendants are endeavoring to avail themselves of the reputation made by complainant for his composition, by his enterprise, skill, and experience as a manager, and this I do not think defendants should be allowed to do.

It is also urged that complainant is only a licensee, and therefore cannot sue in his own name. He is, however, the exclusive licensee for two years, with an option for an extension, and, by the terms of his license, is to bring all necessary suits for the protection of his rights, and hence is, I think, the only one to bring suit for infringement in this country and Canada.

It is also urged that the proof shows that the opera, as a whole, was the joint production of Poulton, Bellamy, and Jacobowsky; the two first named being the authors of the dialogue, dramatic and scenic situations and songs, and the music by Jacobowsky; and that complainant does not show that he is owner of Bellamy's interest.

The bill, which is sworn to, avers that Poulton became the sole owner of the entire operetta, and that complainant acquired his title. But even if the bill and proof did not show that complainant is clothed with the control of all the interests in the piece, it does show that he has acquired Poulton's interest, and that is enough to protect him against a wrong-doer.

I have discussed the case for the purposes of the motion for injunction mainly upon complainant's right to be protected in the name; but complainant insists that the defendant's piece is not in fact an original composition, but is an infringement upon the dialogue and dramatic arrangement of his operetta. This question, however, will be more appropriately considered at the final hearing, in the light of the proof as shall then appear.

The injunction is allowed as prayed.