OUTCAULT et al. v. LAMAR et al.

(Supreme Court, Appellate Division, First Department. December 10, 1909.)

1. COURTS (§ 489*)—FEDERAL COURTS—JURISDICTION—SUBJECT-MATTER—COPYRIGHTS.

Under Rev. St. § 629, subd. 9 (U. S. Comp. St. 1901, p. 504), giving to the Circuit Courts original jurisdiction of all suits at law or in equity arising under the copyright laws of the United States, the federal courts have exclusive jurisdiction of cases arising under such laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1330; Dec. Dig. § 489;* Copyrights, Cent. Dig. §§ 49, 67.]

2. COURTS (§ 489*)—JURISDICTION—NATURE OF CONTROVERSY—COPYRIGHTS.

A state court has jurisdiction of a suit for unlawful competition, unless it appears from the complaint that plaintiff is seeking to enforce a right based on the copyright laws of the United States, and, if this does not appear, the federal courts have no jurisdiction of the case in the absence of diversity of citizenship, though the answer presents a defense based on the copyright laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1330; Dec. Dig. § 489;* Copyrights, Cent. Dig. §§ 49, 67.]

3. COPYRIGHTS (§ 47*)—ASSIGNMENT—SCOPE—CARTOONS—DRAMATIZATION.

Assignment of the right to print and publish certain cartoons and to have them copyrighted, reserving dramatization rights to the author, did not authorize the assignee to copyright a drama or play based on the cartoons or the situations therein depicted, whether written at the time of the assignment or thereafter.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig. § 47.*]

4. COPYRIGHTS (§ 47*)—ASSIGNMENT—OPERATION—EXCLUSIVE RIGHT TO NAME.

Where an author of certain cartoons entitled "Buster Brown" authorized an assignee to print, publish, and copyright them, the assignee's copyright did not give to it the exclusive right to the use of the title.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig. § 47.*]

5. COPYRIGHTS (§ 37*)—COPYRIGHT NAME—PROTECTION.

The holder of a copyright is entitled to protection in the copyright name as well as in the literary production where there is an infringement

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in whole or in part of the production which is the subject of the copyright, but the name alone is not protected by the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 38; Dec. Dig. § 37.*]

6. COURTS (§ 489*)—STATE AND FEDERAL COURTS—UNLAWFUL COMPETITION—COPYRIGHT.

An artist conceived a series of cartoons entitled "Buster," "Buster Brown," and "Tige," dealing with the adventures of a small boy and his dog. The artist assigned the right to print and publish the cartoons, and copyright the same to defendants' assignor, from which defendants procured alleged rights of dramatization. Held, in a suit by plaintiffs, who had secured the rights of dramatization from the artist, for unlawful competition in the use of the words "Buster," "Buster Brown," and "Tige," in connection with their dramatization, that the fact that plaintiffs in anticipation of defendants' defense proved as a part of their main case that the assignment to defendants did not cover dramatization rights did not show that plaintiffs' case was based on the copyright statutes so as to deprive the state courts of jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1329; Dec. Dig. § 489;* Copyrights, Cent. Dig. §§ 49, 67.]

Appeal from Special Term, New York County.

Action by Richard F. Outcault and others against Al Lamar and another. From a judgment dismissing the complaint, plaintiffs appeal. Reversed, and new trial granted.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Nathan Burkan, for appellants.
Wm. A. McGrath, for respondents.

LAUGHLIN, J. The theory upon which the complaint was dismissed, according to the conclusions of law contained in the decision, was that the issues in this action involved the determination of rights under a copyright, and that the federal courts have exclusive jurisdiction thereof. By virtue of the provisions of section 629, subd. 9, Rev. St. U. S. (U. S. Comp. St. 1901, p. 504), Circuit Courts are given original jurisdiction "of all suits at law or in equity arising under the patent or copyright laws of the United States." It is well settled that the federal courts have exclusive jurisdiction of the cases arising under the statute quoted. We are of opinion that this suit does not arise under the copyright law for it is not brought to enforce any right derived under the copyright laws of the United States. The question as to whether the state court has jurisdiction depends upon the allegations of the complaint, and, unless it appears therefrom that the plaintiff seeks to enforce a right based upon the copyright laws of the United States, the federal court would have no jurisdiction of the case in the absence of a diversity of citizenship, and the state courts would have exclusive jurisdiction, even though the answer presents a defense based upon the copyright laws. Pratt v. Paris Gaslight & Coke Co., 168 U. S. 255, 259, 18 Sup. Ct. 62, 42 L. Ed. 458; Excelsior W. P. Co. v. Pacific Bridge Co., 185 U. S. 282, 287, 22 Sup. Ct. 681, 46 L. Ed. 910; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 458, 14 Sup. Ct. 654, 38 L. Ed. 511; Herzog v. Hey-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

man, 151 N. Y. 587, 45 N. E. 1127, 56 Am. St. Rep. 646; Straus v.
American Pub. Ass'n, 45 Misc. Rep. 251, 92 N. Y. Supp. 153, affirmed
103 App. Div. 277, 92 N. Y. Supp. 1052; Wooster v. Crane, 147 Fed.
515, 77 C. C. A. 211; Atherton Machine Co. v. Atwood, Morrison &
Co., 102 Fed. 949, 43 C. C. A. 72. If the state court could be ousted
of jurisdiction by a defense, when the case presented by the complaint
is one over which the federal court would not have jurisdiction, then,
when the plaintiff files his bill in the federal court, the defendant could
demur without presenting the same defense, and the federal court
would be without jurisdiction, and the plaintiff could not obtain a
hearing on the merits in either court.

It is manifest that the plaintiff must have a right to have his case
decided on the merits, either by the state or by the federal court. The
state court, therefore, is not warranted in refusing to exercise juris-
diction if the case, as presented in the complaint, is one which, if pre-
sented to the federal court by a bill in equity, would not give that court
jurisdiction. In deciding the appeal, therefore, it becomes necessary to
consider the allegations of the complaint, and, since it is also claimed
that upon the trial the plaintiffs went beyond their complaint and
tendered an issue basing their right to recover on the copyright laws
of the United States, to consider further whether the complaint was,
in effect, by consent, enlarged, and whether in either aspect the plain-
tiffs when they rested their case were asserting a right to relief based
upon the copyright laws of the United States.

The plaintiffs allege, in substance, so far as material to the questions
to be decided, that the plaintiff Outcault is a cartoonist, and is the
author, inventor, and designer of a series of sketches or prints en-
titled "Buster Brown" and "Buster"; that the hero and protagonist
of the sketches is a fictitious character, the creation of the cartoonist
for which he adopted the fanciful and arbitrary name and title of
"Buster Brown"; that the sketches or prints represent the fictitious
character as a young male child, about five years of age, with blonde
hair, dressed in bloomers and a pink coat extending a little above the
knees, around which he wears a belt, and with his feet encased in socks
and slippers, with the knees exposed, and a large white collar and a
large bow, and wearing or carrying a sailor hat; that the character
is represented in pictorial illustrations invented by the cartoonist in
connection with different situations, characters, objects, and scenes,
and particularly with his playmate, a dog, which the cartoonist arbi-
trarily named "Tige"; that the pictorial illustrations are a narrative
of the adventures, experiences, and exploits of the fictitious charac-
ter familiarly called "Buster" and his dog "Tige"; that on the 15th
of April, 1902, the cartoonist granted to the New York Herald Com-
pany the right to print, publish, and vend the cartoons and prints en-
titled "Buster Brown" in connection with its Sunday issue of the New
York Herald, and that the cartoons were duly copyrighted, but that
the cartoonist "reserved to himself all other rights in said series, in-
cluding the sole and exclusive right to dramatize said series of sketches
or prints"; that the cartoons or prints illustrating the exploits and ad-
ventures of the fictitious character have since been published in each

successive issue of the newspaper, extending over a period of about four years, and have been reproduced in numerous other papers in different parts of the United States and Europe through the Herald; that since about the 1st day of January, 1906, the cartoonist granted to the New York American the right to print, publish, and vend a continuation of said series of prints or sketches and the same have been duly copyrighted, likewise reserving to himself the exclusive right to dramatize the same, and that since that date the sketches or prints have been and are now being published by the New York Sunday American and other papers, with its consent, under the title of "Buster"; that the sketches or prints have been extensively advertised and have since been published in book form by the cartoonist under the title "Buster Brown"; that the prints or cartoons were the sole, exclusive, and original creations of the cartoonist, and acquired a great popularity and reputation with the public, both through their intrinsic merit and through his reputation; that in 1902 the cartoonist, in collaboration with one George Totten Smith, dramatized the sketches or prints in the form of a musical drama, based on the sketches depicting the scenes, characters, adventures, and exploits or "Buster Brown" and his dog "Tige" for public performance, and adapted the same for use upon the public stage, and for the purpose of identifying the play as his and indicating the origin of the same to the public, and indicating to theater-goers that the play is a dramatization of his famous sketches or prints entitled "Buster Brown," adopted and used and now uses as the title of the play the name "Buster Brown"; that in the year 1902 said Smith assigned his rights in the play to the individual plaintiffs, who are now the exclusive owners of the play, including the title and name, as well as the manuscript; that on the 25th day of September, 1903, the plaintiffs copyrighted the play under the title "Buster Brown," and certificates of copyright were duly issued to them under said title by the Librarian of Congress; that the individual plaintiffs granted to one Melville B. Raymond the right to produce the play upon the public stage under the title "Buster Brown," and he caused it to be continuously produced upon the public stage by a number of theatrical companies throughout the United States since on or about the 25th day of December, 1903, until the 1st day of June, 1906; that the plaintiff corporation was incorporated under the laws of this state on the 6th day of January, 1906, for the purpose of producing this play among others, and thereafter acquired the exclusive right to produce the play, and has since the 15th day of August, 1906, presented it to the public by several theatrical companies; that the play and its principal character, known as "Buster Brown," familiarly called "Buster," and his dog "Tige," acquired great popularity through their intrinsic merits with the public and especially with children, as they "deal with the pranks of a mischievous boy and his dog"; that the play became and was successful and profitable, and the individual plaintiffs have realized in royalties from its production more than $50,000; that the press and public have associated and continue to associate the name "Buster Brown" or "Buster," "as he is usually known by the children," with the plaintiffs' play and

leading character; that the play, as well as the title thereof, is the sole and exclusive property of the individual plaintiffs, and that the name "Buster Brown" has never before been used as the title of a play or the name of any character in a play, and is used by the plaintiffs to designate the play and the hero and leading character thereof; that, with full knowledge of these facts, the defendants, without the consent of the plaintiffs, and in violation of their rights, "and in pursuance of a deliberate design to cheat and defraud the plaintiffs and the public," have since on or about the 3d day of August, 1908, produced upon the public stage "at the Brighton Beach Music Hall, Brooklyn, N. Y., and still continue to do so, a play or dramatic sketch advertised and announced to the public in posters, placards, and newspapers, under the title 'Buster Brown,' and simulated and colorably imitated the plaintiffs' said title," and are still producing the play upon public stages throughout the United States, and charging admission fees therefor, and are booking their play throughout the country, and threaten and intend to have it performed in each city wherein the plaintiffs' play is to be performed; that the defendants fraudulently and wrongfully appropriated and used the title and name "Buster Brown" in connection with their play to falsely lead the people to believe that it is the play owned by the plaintiffs and based upon said cartoons or prints, and have conveyed that impression to the public by press notices and announcements and otherwise; that the profits of the plaintiffs from the play arise from its production and from royalties or percentages of the receipts of the performances paid by others for the right and privilege of producing it, and the individual plaintiffs have at all times reserved to themselves the exclusive right to license others to produce the play; that the defendants have deceived and misled many persons and induced them to attend the production of their play, believing it to be the play of the plaintiffs, and have thus obtained large profits, to the great injury and damage of the plaintiffs, and, unless they are restrained from the use of the title and name of the plaintiffs' play, they will destroy its value and will cause irreparable injury to the plaintiffs, who have no adequate remedy at law; that the plaintiff corporation has incurred large cost and expense and liability in causing two independent performing companies, with the necessary scenery, costumes, printing matter, and accessories to produce the play in various cities of the United States and has obtained bookings therefor; that the unlawful acts of the defendants will seriously interfere with the booking of the plaintiffs' play, and will result in the cancellation of their bookings to their great loss, injury, and damage. The relief demanded is that the defendants and their agents and servants be enjoined from using the title or name "Buster Brown" or "Buster" as the title or part of the title of any play or dramatic sketch, and from using the names "Buster Brown," "Buster," or "Tige," or imitations thereof, in connection with any dramatic play or in any advertisement thereof, and that the defendants account for all profits realized by them from the public performances of their play under the title "Buster Brown" or "Buster," with the usual prayer for other and further relief.

The learned counsel for the respondents does not contend that the action is based upon the plaintiffs' copyright of their own play. Although the plaintiffs allege that their play was copyrighted under the title "Buster Brown," they do not base their action on the copyright, and they do not even allege that the title and names in the use of which they seek protection by an injunction were copyrighted. There is no claim that there has been an infringement of the dramatic composition which was copyrighted. The allegations with respect to the copyright of the play by the plaintiffs are not material to the cause of action stated in the complaint, and, although these allegations were put in issue by the answer, the plaintiffs gave no proof thereof. The plaintiffs tried their case upon the theory that their action is for protection in the use of the title and names of the principal characters of the play, and not the literary composition, and that this right is based upon the fact that they were the first to use this title and these names in connection with a play, and that the defendants, for the purpose of misleading the public and obtaining patrons who would otherwise patronize the play of the plaintiffs, have appropriated the title and names by which the plaintiffs' play and the principal characters thereof have become known and have become popular. There is no allegation that the plaintiffs have acquired or assert the right to the use of the title or names by virtue of any copyright, nor do the allegations of the complaint to the effect that the cartoons were copyrighted by the Herald with the consent of Outcault who reserved to himself all dramatic rights present any issue with respect to the validity or effect of that copyright on the rights of the plaintiffs in the premises. They are allegations evidently made for the purpose of presenting the history of the origin and use of the cartoons and of their attracting great public attention and becoming exceedingly popular, and as an explanation of the dramatization of a play presenting the features depicted by the cartoons. The plaintiffs do not allege that they obtained any rights from the Herald Company, but, evidently with a view to presenting all the facts and anticipating the defense which the defendants have interposed, have alleged, in effect, that they conferred upon the Herald Company the right to print and publish the cartoons and to have them copyrighted, but reserved all rights with respect to dramatization as they lawfully might do. Ford v. Charles E. Blaney Amusement Co. (C. C.) 148 Fed. 642. That would not carry with it any authority to copyright the drama if it had then been written, and surely it could not carry the right to copyright a drama subsequently written. The copyright of the cartoons manifestly would not give the Herald Company the exclusive right to have a drama written and presented, based upon the scenes depicted by the cartoons. The fact that the cartoons bore the title "Buster Brown," when copyrighted, did not give the Herald Company, by virtue of the copyright, the exclusive right to use that title or those words in connection with a play subsequently written. The holder of a copyright will undoubtedly be protected in the copyright name, as well as in the literary production, where there is an infringement in whole or in part of the literary production which is the subject of the copyright, but the name alone is not protected by

the copyright. Drone on Copyrights, p. 145, and note; Corbett v. Purdy (C. C.) 80 Fed. 901; Donnelley v. Ivers (C. C.) 18 Fed. 592. The theory of the complaint is that the cartoonist invented this title and these names, and that he and his associates were the first to use them in connection with a public play, and that a court of equity should protect them in that use upon the principles upon which trade-names and trade-marks are protected by the courts, notwithstanding the fact that they are used in connection with a copyright or a patent. Munro v. Tousey, 129 N. Y. 38, 29 N. E. 9, 14 L. R. A. 245; Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111; Potter v. McPherson, 21 Hun, 559. It seems quite clear, therefore, that the complaint presented a case of which the courts of this state have jurisdiction and over which the federal courts have no jurisdiction excepting upon appropriate allegations of diversity of citizenship which would be a ground for removing the case from the state court, but not for the state court to decline jurisdiction.

Upon the trial the plaintiffs gave evidence tending to establish the material allegations of the complaint. The defendants by their answer claim that the Herald Company, by virtue of copyrighting the cartoons, obtained the right to dramatize the incidents depicted thereby, and that they have been duly authorized and licensed by the Herald Company to use the title "Buster Brown" and "Buster" and those names and the name "Tige," and to dramatize and present a play based on the incidents depicted by the cartoons. It thus appearing by the answer that the defendants claimed under rights derived from the Herald Company, the plaintiffs anticipated the defense, and showed on their affirmative case, not only that, when Outcault conferred upon the Herald Company the right to copyright the cartoons, he reserved to himself the right to dramatize them, but for the purpose of showing, also, that the Herald Company recognized that it had not obtained the dramatic rights, they proved two letters from the Herald Company to him under date of October 1, 1902, the first reciting that the Herald Company was the owner of the copyright in the cartoons, and would transfer to Outcault at any time its rights therein in order to enable him to protect himself against infringement, also "all dramatic rights in this series," and the second, which was written because he did not like the phraseology of the first, purports to transfer to him, in consideration of a dollar and other valuable considerations, all of the Herald Company's rights in the copyright and "all dramatic rights in this series." The learned counsel for the respondent argues that this evidence changed the pleading, and that the plaintiffs should now be conclusively held to have based their claim to relief on the trial on the assignments of the copyright from the Herald. We are of opinion, however, that there was no intention by the introduction of this evidence to change the theory of the plaintiffs' action. The plaintiffs might well have waited to introduce it on rebuttal to show, if necessary, merely that the Herald Company had no dramatic rights to assign to the defendants since any assignment to them was after the Herald Company thus formally recognized the agreement under which it had received from Outcault merely the naked right to copyright and publish the cartoons. It

should be, for the purpose of determining whether or not the pleading was changed, regarded as if introduced on rebuttal.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to the appellants to abide the event. All concur.