KLAW et al. v. GENERAL FILM CO.

(Supreme Court, Special Term, New York County.   March 3, 1915.)

LITERARY PROPERTY ☞8—RIGHT IN TITLE OF PLAY—INFRINGEMENT BY MO-
TION PICTURE—"PROPERTY RIGHT."

Where plaintiffs produced a play under a certain title on the legitimate
stage, large sums of money being spent for its production, and the pres-
entation was a success, and defendant produced a dissimilar moving
picture play under the same title, plaintiffs could restrain the use of such
title, since the name by which a composition or theatrical production has
become known to the public becomes a "property right," which may not
be infringed by any one for profit by using the name to the owner's in-
jury.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 7;
Dec. Dig. ☞8.

For other definitions, see Words and Phrases, First and Second Series,
Property Right.]

Suit by Marc Klaw and others against the General Film Company.
Judgment for plaintiffs.

Mortimer Fishel, of New York City, for plaintiffs.
Leroy D. Ball, of New York City, for defendant.

PLATZEK, J.  Some five years ago Robert Hilliard, one of the
plaintiffs, a popular and gifted actor, first produced an elaborate
dramatic production entitled "A Fool There Was," at the Liberty
Theater, in the city of New York.  From that time the play has been
presented and is now being produced throughout the United States
and Canada with success, both from an artistic and financial stand-
point.  Large sums of money have been expended by the plaintiffs for
actors, actresses, hiring of theaters, the equipment of the play, and
in extensive advertising for more than four years.  After the dramatic
representation "A Fool There Was" acquired a reputation, and its title
became well known, the defendant appropriated the title "A Fool
There Was" and produced it in connection with one of its photo
dramas, with knowledge that the plaintiffs had been and were pro-
ducing a dramatic representation under such title.  It appears that the
title "A Fool There Was" is an original title in connection with a play,
and that no other play under such title was presented prior to the
production of the drama by Robert Hilliard.  The circumstance that
defendant's play is dissimilar to plaintiffs' play, or that it was pro-
duced as a photo play, does not militate against their right to enjoin the
appropriation of and use by the defendant of the title.

"The question, 'What's in a name?' has been answered by the courts in
many well-considered cases, wherein the exclusive right to a name possessed
or owned by a successful business enterprise has been maintained against
imitators and wrongdoers, who sought by an unauthorized use to deceive the
public and profit by the wrong."  Frohman v. Payton, 34 Misc. Rep. 275, 68
N. Y. Supp. 849; Hopkins Amus. Co. v. Frohman, 202 Ill. 541, 67 N. E. 391;
Outcault v. Lamar, 135 App. Div. 110, 119 N. Y. Supp. 930; 38 Cyc. 837.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Aronson v. Fleckenstein (C. C.) 28 Fed. 75, it is stated:

"The name given the composition by its author, and under which it has become known to the public, became, as it seems to me, a property right—not strictly on the principle of a trade-mark, but because the name and literary composition became blended and united, so that *the name identifies the composition to the public*—so that the name of this composition belongs to this complainant as identifying and describing his literary property, and as a part of the piece itself, and *defendants have no right to profit by using this name to the injury of complainant,* * * * and defendants have no right to avail themselves of the merits and popularity of complainant's play to draw audiences to the performance of theirs, even if, as is claimed, their composition is a new and original dramatic arrangement. *It is a fraud upon the public, as well as upon the complainant, to attempt to do so.*"

In Ball v. Broadway Bazaar, 194 N. Y. 435, 87 N. E. 674, Werner, J., writing for the court, says:

"Although we agree with the learned Appellate Division in recognizing the technical distinction between trade-marks and trade-names, we think the same fundamental principles of law and equity are applicable to both. 'All such cases, whether of trade-mark or trade-name, or other unfair use of another's reputation, are concerned with an injurious attack upon the good will of a rival business; customers are diverted from one trader to another, and orders intended for one find their way to the other.' Sebastian on the Law of Trade-Marks, p. 17. Trade-marks and trade-names are in reality analogous to the good will of the business to which they appertain. The trade-mark represents it in the market, and the trade-name proclaims it to those who pass the shop. In either case such unfair conduct as is calculated to deceive the public into believing that the business of the wrongdoer is the business of him whose name, sign, or mark is simulated or appropriated constitutes the gist of the offense."

It was also held in this case that:

"Trade-names are protected by the application of the same principles of equity that relate to technical trade-marks." Howard v. Henriques, 3 Sandf. Ch. 725; Glen & U. Mfg. Co. v. Hall, 61 N. Y. 226, 19 Am. Rep. 278; Paul on Trade-Marks, § 182.

It is not disputed that plaintiffs' play was produced with success by leading actors and actresses in the principal cities of the United States, and was a valuable theatrical production. It is not disputed that the defendant presented a moving picture presentation under the title "A Fool There Was." It affirmatively appears that the defendant produced its photo play under said title in different cities of the Union no less than 3,000 times without authority. In Kalem Co. v. Harper, 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285, it is held that the owner of dramatic rights might forbid the dramatic representation by moving pictures, and to the present time the only right to protect moving pictures arises from the words "dramatic" or "drama." Photo Drama Co. v. Social Corp'n (D. C.) 213 Fed. 374–377; Atlas Mfg. Co. v. Smith, 204 Fed. 398, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002; Frohman v. Fitch, 149 N. Y. Supp. 633. The plaintiffs have established and acquired an exclusive proprietary right as a trade-name and trade-mark in the words "A Fool There Was" as a title in connection with their play, and they are entitled to a permanent injunction restraining the defendant from the continuance of the infringement and impairment of their right in and to such trade-mark or trade-name.

Judgment for plaintiffs. An interlocutory decree may be entered herein, making final the injunction to restrain defendant from the further use of the title "A Fool There Was," and for an accounting by the defendant, and for this purpose the appointment of a referee. Submit findings of fact and conclusions of law, and form of interlocutory decree.