## MANNERS v. TRIANGLE FILM CORP. et al.

### (District Court, S. D. New York. June 14, 1917.)

### No. 94.

1. TRADE-MARKS AND TRADE-NAMES ☞97—RIGHT TO INJUNCTION—NOTICE.

Where plaintiff, the author of a duly copyrighted play entitled "Happiness," which had been presented but withdrawn, notified defendants, the producers of a photo-play, on discovering that they were offering a play under the same name, that they were violating his rights, and defendants, despite the notice and protest, continued to advertise their photo-play under such name, insisting that they were authorized to use it, an injunction in favor of plaintiff cannot be denied on the ground of unfairness.

2. TRADE-MARKS AND TRADE-NAMES ☞13—UNFAIR COMPETITION—TITLE OF PLAY.

The title of a drama, though not protected by copyright, may, on the theory of a trade-mark, be protected and the producer of a photo-play enjoined from using it.

3. TRADE-MARKS AND TRADE-NAMES ☞21—UNFAIR COMPETITION.

Plaintiff, a successful dramatic author, wrote a play which he entitled "Happiness." The play was duly copyrighted and was presented at a prominent theater, one of the foremost actresses of her day being in the cast. After some performances, the play was withdrawn, it being intended to subsequently revive its production. *Held* that, though the word "Happiness" is in general use, yet, plaintiff being the first in the field, his adoption gave to the word a secondary meaning indicating his play, and he is entitled to protection of rights thus acquired, and defendants will be enjoined from producing a photo-play under the same name.

4. TRADE-MARKS AND TRADE-NAMES ☞21—UNFAIR COMPETITION—DEFENSES.

In such case, plaintiff's rights are not affected because of a previous dramatic production under the same name for a charitable purpose, which took place in a private house.

5. TRADE-MARKS AND TRADE-NAMES ☞97—TITLE—RIGHT TO INJUNCTION.

While there can be no copyright in a title, nevertheless equity will enjoin the use of the title of a well-known publication by a rival work.

In Equity. Action by J. Hartley Manners against the Triangle Film Corporation and another. On motion for injunction pendente lite. Motion granted and motion to dismiss denied.

David Gerber, of New York City, for plaintiff.

Walter N. Seligsberg, of New York City, Alex L. Strouse, of Milwaukee, Wis., and Jay Leo Rothschild, of New York City, for defendants.

MANTON, District Judge. The plaintiff is a well-known playwright, and seeks in this action to restrain, by injunction, the defend-

ants from using the title "Happiness" as the title of a play or photo-play. He claims that, in violation of his sole right in the title "Happiness" as a trade-name or trade-mark, the defendants should not only be restrained in its use, but should compensate him for the damages he has sustained. The action has been removed from the state court.

The defendants move to dismiss the complaint on the ground that it does not state facts warranting equitable relief.

Much is claimed by plaintiff as to delays on the part of the defendants in defending the action, and it is argued that this practice is indulged in so as to avoid a trial of the action before the summer recess of this court, to the advantage of the defendants, in that the defendants may profit by the use of the title "Happiness" in the interim. It is claimed that the life of a motion picture of the type produced by the defendants is but a few months, and that, since this cause cannot be tried until the October session of the court, unless an injunction be granted now an injunction resulting from the trial of the action would be of little avail.

The plaintiff is the author of "Peg o' my Heart," "The Harp of Life," and "Out There." His wife, under the stage name of "Miss Laurette Taylor," is well known to the theater-going public and has had a successful career. The play "Happiness," written by the plaintiff, has been copyrighted. In March, 1914, it was presented at the Cort Theater, in New York City, and after some performances taken off. The moving affidavits indicate that the play is to be used in the future under this title.

[1] The plaintiff's attention was called, in April last, to the announcement of the production of the photo-play at the Rialto Theater, in this city, under the title "Happiness." Notice was served upon the theater and the producers of the play, the defendants herein, of the claim of ownership by the plaintiff of the title "Happiness" as the title of a play. After notice, defendants refused to discontinue the use of the title "Happiness," and advertised it extensively in the press and otherwise under this title, and continued performing in motion pictures under said title in various cities mentioned in the affidavits. In addition to this the plaintiff personally visited and called upon Mr. Rothapfel, manager of the defendant theater company, and protested against the use of this title.

Dodd, Mead & Co. are the plaintiff's publishers, and have acquired from the plaintiff sole right to publish, plaintiff reserving the dramatic rights, and the rights of presentation upon the stage in any and every form.

The defense interposed is that on November 12, 1910, a lady named Spiegelberg gave a performance of a tragedy in one act entitled "Happiness," and this was performed in her country residence in Westchester county, N. Y., and for which a charge of $5 was made for the benefit of a hospital; and, further, the presentation of a play called "Happiness" by the Chatauqua Association. However, this latter play was produced in 1916, two years after the production by the plaintiff of his play and after his play had been copyrighted. Upon notice and protest by the plaintiff, the Chautauqua Association changed the title of the play to "The Quest for Happiness." The defendants, having

received notice of the claim of the plaintiff, proceeded to produce their photo-play under this title, and the capital thus invested was after due and timely notice, and can only be based upon insistence that they were right in the position which they took. Therefore it will not be unfair to grant this injunction as against the defendants unless the strict rule of law forbids the granting of such relief. And, in addition thereto, it is claimed, and properly so, by the plaintiff, that the matter of change of title by the defendants is a simple one if the photo-play is permitted to continue. What is now probably a five and ten cent moving picture performance will undoubtedly take from a valuable asset the trade-name of this play, which will be produced under expensive auspices to a theater-going-public.

[2-4] If the title "Happiness" is infringed, it can be protected on the doctrine of unfair competition. Corbett v. Purdy (C. C.) 80 Fed. 901; Glaser v. St. Elmo Co. (C. C.) 175 Fed. 276.

The courts have exercised their equitable jurisdiction and enjoined defendants from using as the title of photo-plays the plaintiff's title, such as "A Fool There Was," where the plaintiff had been using it as the title of a drama. Klaw & Erlanger v. General Film Co., 171 App. Div. 945, 156 N. Y. Supp. 1128. Valuable titles which have been used as trade-names have been protected in the following cases: Shook v. Wood, 32 Pa. Leg. Int. 264; Outcault v. Lamar, 135 App. Div. 110, 119 N. Y. Supp. 930; Frohman v. Morris, 68 Misc. Rep. 461, 123 N. Y. Supp. 1090; Frohman v. Payton, 34 Misc. Rep. 275, 68 N. Y. Supp. 849. A fanciful title, such as "The Come Back," was protected by Judge Clark in the state court. Dickey v. Mutual Film Corp. (Sup. Ct. S. T.) 160 N. Y. Supp. 609.

In Aronson v. Fleckenstein (C. C.) 28 Fed. 75, the rule was laid down that the name given a composition by its author, by which it has become known to the public, is a property right which should be protected, and that it is a fraud upon the public and the complainant to permit its use.

The use of the title "Happiness" in a prominent theater in New York City, staged for performance by one of the foremost actresses of her time, has given to such title a value and asset as to constitute a property right in this plaintiff which should be protected. While it is true that the title of a copyrighted play is not protected by the copyright, the use of that title is none the less to be secured by the owner of the copyrighted matter as a trade-mark, if the title so first employed by him has acquired a trade significance as an arbitrary designation. If the word "Happiness," even though a word in common use, was adopted by the plaintiff, and at the time of its adoption was not employed by another as the designation of the title of a play, it may become a trade-name or trade-mark. The title may in no sense be descriptive of the drama as such, and, indeed, it may be an arbitrary title employed to identify rather than describe the composition itself. If the title is serviceable as a description of the subject portrayed in the play, it was open to adoption by the plaintiff, and, if such use gave it a secondary meaning in identification of the plaintiff's dramatic composition, it became so associated with the good will of the drama as to be established in the production of the play and was a trade-mark.

I think the circumstances and use of the title by the plaintiff herein justify the conclusion that the plaintiff had secured a trade-mark or trade-name in said title. After full notice, the defendants, having chosen the title and advertised it in a photo-play, did so at their peril. Justification for this use cannot be found in the isolated case of the production of a play of a similar title at Mrs. Spiegelberg's home.

[5] The right to a title vests in the first to apply and use the title. McLean v. Flemming, 96 U. S. 245, 24 L. Ed. 828. In the G. & C. Merriam Co. v. Saalfield, 198 Fed. 369, 117 C. C. A. 245, it was said:

"A trade-mark is a trade-mark because it is indicative of the origin of the goods. The original right to its exclusive use was not based upon any statute, but upon principles of equity; and the right is acquired, not by discovery or invention or registration, but by adoption and use."

In Drone on Copyrights (page 535) it is said:

"There can be no copyright in a title; but, on general principles of equity, an injunction will be granted restraining a person from appropriating the title of a well-known publication for a rival work, nor will a person be allowed to use a title which is a mere colorable imitation of another for the purpose of misleading the public into buying one publication in the belief that it is the other."

I think the use of the title for a motion picture play as used by the defendants is an infringement of the plaintiff's sole right to the title as the title of a play in drama on the stage, and that the injunction should be granted. Kalem v. Harper, 222 U. S. 61, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285.

Upon examination of the bill of complaint, I deem the objections offered to its sufficiency not well founded, and therefore the motion to dismiss the bill will be denied.