## KALEM COMPANY *v.* HARPER BROTHERS.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 26.    Argued October 31, November 1, 1911.—Decided November 13,
1911.

An exhibition of a series of photographs of persons and things, ar-
ranged on films as moving pictures and so depicting the principal
scenes of an author's work as to tell the story is a dramatization of
such work, and the person producing the films and offering them for
sale for exhibitions, even if not himself exhibiting them, infringes the
copyright of the author under Rev. Stat., § 4952, as amended by
the act of March 3, 1891, c. 565, 26 Stat. 1106.

*Quære* whether there would be infringement if the illusion of motion
were produced from paintings instead of photographs of real per-
sons, and also *quære* whether such photographs can be copyrighted.

Rev. Stat., § 4952, as amended by the act of March 3, 1891, c. 565,
26 Stat. 1106, confines itself to a well-known form of reproduction
and does not exceed the power given to Congress under Art. I, § 8,
cl. 8 of the Constitution, to secure to authors the exclusive right to
their writings for a limited period.

169 Fed. Rep. 61, affirmed.

THE facts are stated in the opinion.

*Mr. John W. Griggs* and *Mr. Drury W. Cooper* for ap-
pellant:

The Court of Appeals was right in affirming the proposi-
tion that the making and publication of a series of pictures
of the incidents described in a book is not an infringe-
ment of a copyright in the book.

Copyright does not monopolize the intellectual con-
ception, but only the form of expression, *i. e.*, the "ar-
rangement of words," *Holmes* v. *Hurst*, 174 U. S. 86,
adopted by the author. It is the writings of the author
that are protected, and the statute cannot extend the

monopoly to his ideas. *White-Smith* v. *Apollo,* 209 U. S. 17; *Stowe* v. *Thomas,* 2 Wall. Jr. 547; 23 Fed. Cas. 201, 206; *Baker* v. *Selden,* 101 U. S. 99; *Johnson* v. *Donaldson,* 3 Fed. Rep. 22; *Perris* v. *Hexamer,* 99 U. S. 674, 676; *Bobbs-Merrill Co.* v. *Straus,* 210 U. S. 339, 347.

A moving picture film, whether made by a modern rapid-fire camera, or by the ancient and laborious process of taking, or drawing, and collating pictures of objects in successive positions, is a picture. *Edison* v. *Lubin,* 122 Fed. Rep. 240; *Am. Mutoscope Co.* v. *Edison,* 137 Fed. Rep. 262; *United States* v. *Berst,* 175 Fed. Rep. 121. And see *Edison* v. *Mutoscope Co.,* 114 Fed. Rep. 926.

Copyright law differs from the law of patents; in the former there may be two concurrent copyrights in what is identically the same creation, in the latter there can only be one patent, the first inventor being entitled. MacGillivray on Copyrights, 243. And see *Baker* v. *Selden,* 101 U. S. 99.

Termination of the author's common-law rights upon voluntary publication, *Millar* v. *Taylor,* 4 Burr. 2331, has been recognized frequently by this court, and was known to the framers of the Constitution. *Stephens* v. *Cady,* 14 How. 528, 530; *Lithograph Co.* v. *Sarony,* 111 U. S. 53, 58; *Holmes* v. *Hurst,* 174 U. S. 82, 86; *Wheaton* v. *Peters,* 8 Pet. 591, 676, and cases *passim.*

If one, by copyrighting a book, can prevent an artist from picturing the scenes described, reason cannot afford room for the orator to use, in his flights of fancy, the author's created characters or figures of speech, for the idea is not open to appropriation or use in one case more than in the other. But it is the writing only, and not the idea, that is monopolized; the mode of expression and not the thought conveyed. Books and pictures are essentially different.

As to whether a painting is a manuscript, see *Parton* v. *Prang,* 18 Fed. Cas. 1273.

A series of moving pictures is not a copy of the book, *Perforated Music Roll Case,* 209 U. S. 1, nor are defendants' photographs copies of the book as the word copy is understood. *Bennett* v. *Carr,* 96 Fed. Rep. 213.

The statutory monopoly to make copies does not cover the plates and other tools with which they are made and does not pass with their ownership. *Stephens* v. *Cady,* 14 How. 530. Being a creature of the statute, this species of property is legally distinct from the underlying ideas upon which it is, after all, predicated, just as from the paper and metal without which it would have no commercial value.

A person may utilize the ideas portrayed in a copyrighted publication, provided he bestows upon his own writings such skill and labor as to produce an original result. *Folsom* v. *Marsh,* 2 Story, 100, 115; *S. C.,* 9 Fed. Cas. 342. Utilizing ideas without copyrighting their expression is lawful. *Dun Co.* v. *Lumbermen's Credit Assn.,* 209 U. S. 20; *Morris* v. *Wright* (1870), L. R. 5 Ch. 279; *West Pub. Co.* v. *Lawyers' Co.,* 64 Fed. Rep. 360; 79 Fed. Rep. 756; *Edward Thompson Co.* v. *American Co.,* 130 Fed. Rep. 369; 157 Fed. Rep. 1003.

Not only is there no evidence here that the copyright proprietors were injured even in the slightest degree; but, on the contrary, the defendant asserted by letter that its films would benefit the complainants, and this they did not deny, but stood upon their naked assertion of legal right.

To transcribe a musical composition by making a record upon a phonograph blank, or by perforating a sheet of paper, requires neither creative nor artistic power, but merely the common skill of the artisan. Yet, to make such record, is not to copy the composition, as has been held in every reported case that has come to our special knowledge. *Kennedy* v. *McTammany,* 33 Fed. Rep. 584; *White-Smith Co.* v. *Apollo Co.,* 77 C. C. A. 368; 147 Fed.

Rep. 226; 209 U. S. 1; *Boosey* v. *Wright,* 1 Ch. 122; *Stern* v. *Rosey,* 17 App. D. C. 562.

Under *Lithograph Co.* v. *Sarony,* 111 U. S. 53, and *Bleistein* v. *Donaldson,* 188 U. S. 250, the films were legally copyrightable as they were the result of original conception, posing and artistic skill.

A photograph cannot be an infringement of a copyrighted book. See *Littleton* v. *Ditson Co.,* 62 Fed. Rep. 597; 67 Fed. Rep. 905, holding that "book" is distinct from "musical composition"; *Woods* v. *Abbott,* Fed. Cas. No. 17,938, holding that "photograph" is not a "print"; *Stowe* v. *Thomas,* 2 Wall. Jr. 547, holding that "translation" is not a "copy"; *Hills* v. *Austrich,* 120 Fed. Rep. 862, holding that "stone" does not include "metal plate."

All the marks of literary property that distinguish the book or the drama are lacking from the picture, save in so far as both involve the same underlying ideas.

The exhibition of the pictures, arranged upon a film which is, during all the time of its use, a part of a machine, is not an infringement of the book copyright.

The complainants' creation was not copied in the making of the pictures, but they are realizations, in a different art, of some of the ideas to which Gen. Wallace gave a written portrayal. Their exhibition by machine does not approach more nearly the writing of the book than did their making and selling.

Such exhibition of the pictures is not a "public performance or representation" in violation of the Dramatic Copyright Act. *Daly* v. *Palmer,* 6 Blatchf. 256; *Daly* v. *Webster,* 56 Fed. Rep. 483, distinguished. And see *Chatterton* v. *Cave,* 10 C. P. 572; *Hanststœngel* v. *Baynes,* 1895, App. Cas. 20.

There are no cases in which an exhibition has been declared to be a dramatic performance or representation unless human actors are present, and either performing

themselves or at least causing dummies or puppets to move and act. Drone on Copyrights, 587–589; *Russell* v. *Smith*, 12 Q. B. 236, 237; Brackett on Theatrical Law, p. 54; *Lee* v. *Simpson*, 3 C. B. 871; *Day* v. *Simpson*, 18 C. B. (N. S.) 680; *Turner* v. *Robinson*, 10 Irish Ch. 121, 510, distinguished.

For cases where the courts have distinguished mechanical arrangements from dramatic performances, see *Harris* v. *Commonwealth*, 81 Virginia, 240; *Jacko* v. *The State*, 22 Alabama, 73; *Fuller* v. *Bemis*, 50 Fed. Rep. 926; *Carte* v. *Duff*, 23 Blatchf. 347; 25 Fed. Rep. 183; *Serrana* v. *Jefferson*, 33 Fed. Rep. 347.

The copyright statutes are to be construed strictly, and not stretched by resort to equitable considerations. *Banks* v. *Manchester*, 128 U. S. 244; *Bolles* v. *Outing Co.*, 175 U S. 262, 268; *Higgins* v. *Keuffel*, 140 U. S. 428; *Thompson* v. *Hubbard*, 131 U. S. 123. See, generally, *Oregon Ry.* v. *Oregonian Co.*, 130 U. S. 1, 26.

In any event, defendant is not an infringer, direct or contributory. It does not give any performance in, nor does it manage, any theatre. Dramatizing is entirely distinct from public performance or representation. As an act of infringement, it is defined, Rev. Stat., § 4965, and is punishable by forfeiture of plates; as a penal statute it must be strictly construed. *Thornton* v. *Schreiber*, 124 U. S. 612; *Bolles* v. *Outing Co.*, 175 U. S. 262. Section 4966 provides damages against public performances.

Defendant derives no profit from the exhibition, and hence is not within the class against which § 4966. is directed, for that operates against the actual wrongdoer, *Brady* v. *Daly*, 175 U. S. 174, not the indirect participant therein.

The defendant is not concerned with the ultimate use to which its films are put, and they are manifestly susceptible of many uses which complainants do not contend to be within the purview of a dramatic copyright.

*Russell* v. *Briant*, 8 C. B. 836, 848; *Harper* v. *Shoppell*, 26
Fed. Rep. 519.

If the act protects copyright in a drama against any
exhibition of pictures, it is stretched to cover that which
was not the work of the author, but of another, and there-
fore it is unconstitutional; since that instrument limits
the author's monopoly to his writings.

*Mr. John Larkin* for appellee Harper Brothers.

*Mr. David Gerber* for appellees Klaw & Erlanger.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree restraining an alleged
infringement of the copyright upon the late General
Lew Wallace's book 'Ben Hur.' 169 Fed. Rep. 61. 94
C. C. A. 429. The case was heard on the pleadings and
an agreed statement of facts, and the only issue is whether
those facts constitute an infringement of the copyright
upon the book. So far as they need to be stated here
they are as follows. The appellant and defendant, the
Kalem Company, is engaged in the production of moving
picture films, the operation and effect of which are too
well known to require description. By means of them
anything of general interest from a coronation to a prize
fight is presented to the public with almost the illusion
of reality—latterly even color being more or less repro-
duced. The defendant employed a man to read Ben
Hur and to write out such a description or scenario of
certain portions that it could be followed in action; these
portions giving enough of the story to be identified with
ease. It then caused the described action to be per-
formed and took negatives for moving pictures of the
scenes, from which it produced films suitable for exhi-
bition. These films it expected and intended to sell for

use as moving pictures in the way in which such pictures commonly are used. It advertised them under the title Ben Hur. 'Scenery and Supers by Pain's Fireworks Co. Costumes from Metropolitan Opera House. Chariot Race by 3d Battery, Brooklyn. Positively the Most Superb Moving Picture Spectacle ever Produced in America in Sixteen Magnificent Scenes,' etc., with taking titles, culminating in 'Ben Hur Victor.' It sold the films and public exhibitions from them took place.

The subdivision of the question that has the most general importance is whether the public exhibition of these moving pictures infringed any rights under the copyright law. By Rev. Stat., § 4952, as amended by the act of March 3, 1891, c. 565, 26 Stat. 1106, authors have the exclusive right to dramatize any of their works. So, if the exhibition was or was founded on a dramatizing of Ben Hur this copyright was infringed. We are of opinion that Ben Hur was dramatized by what was done. Whether we consider the purpose of this clause of the statute, or the etymological history and present usages of language, drama may be achieved by action as well as by speech. Action can tell a story, display all the most vivid relations between men, and depict every kind of human emotion, without the aid of a word. It would be impossible to deny the title of drama to pantomime as played by masters of the art. *Daly* v. *Palmer,* 6 Blatchf. 256, 264. But if a pantomime of Ben Hur would be a dramatizing of Ben Hur, it would be none the less so that it was exhibited to the audience by reflection from a glass and not by direct vision of the figures—as sometimes has been done in order to produce ghostly or inexplicable effects. The essence of the matter in the case last supposed is not the mechanism employed but that we see the event or story lived. The moving pictures are only less vivid than reflections from a mirror. With the former as with the latter our visual impression—what we see—is caused by the real pan-

tomime of real men through the medium of natural forces, although the machinery is different and more complex. How it would be if the illusion of motion were produced from paintings instead of from photographs of the real thing may be left open until the question shall arise.

It is said that pictures of scenes in a novel may be made and exhibited without infringing the copyright and that they may be copyrighted themselves. Indeed it was conceded by the Circuit Court of Appeals that these films could be copyrighted and, we may assume, could be exhibited as photographs. Whether this concession is correct or not, in view of the fact that they are photographs of an unlawful dramatization of the novel, we need not decide. We will assume that it is. But it does not follow that the use of them in motion does not infringe the author's rights. The most innocent objects, such as the mirror in the other case that we have supposed, may be used for unlawful purposes. And if, as we have tried to show, moving pictures may be used for dramatizing a novel, when the photographs are used in that way they are used to infringe a right which the statute reserves.

But again it is said that the defendant did not produce the representations, but merely sold the films to jobbers, and on that ground ought not to be held. In some cases where an ordinary article of commerce is sold nice questions may arise as to the point at which the seller becomes an accomplice in a subsequent illegal use by the buyer. It has been held that mere indifferent supposition or knowledge on the part of the seller that the buyer of spirituous liquor is contemplating such unlawful use is not enough to connect him with the possible unlawful consequences, *Graves* v. *Johnson*, 179 Massachusetts, 53, but that if the sale was made with a view to the illegal resale the price could not be recovered. *Graves* v. *Johnson*, 156 Massachusetts, 211. But no such niceties are involved here. The defendant not only expected but invoked by ad-

vertisement the use of its films for dramatic reproduction of the story.   That was the most conspicuous purpose for which they could be used, and the one for which especially they were made.   If the defendant did not contribute to the infringement it is impossible to do so except by taking part in the final act.   It is liable on principles recognized in every part of the law. *Rupp & Wittgenfeld Co.* v. *Elliott,* 131 Fed. Rep. 730, 732. *Harper* v. *Shoppell,* 28 Fed. Rep. 613. *Morgan Envelope Co.* v. *Albany Paper Co.,* 152 U. S. 425, 433.

It is argued that the law construed as we have construed it goes beyond the power conferred upon Congress by the Constitution, to secure to authors for a limited time the exclusive right to their writings.   Art. I, § 8, cl. 8. It is suggested that to extend the copyright to a case like this is to extend it to the ideas as distinguished from the words in which those ideas are clothed.   But there is no attempt to make a monopoly of the ideas expressed.   The law confines itself to a particular, cognate and well known form of reproduction.   If to that extent a grant of monopoly is thought a proper way to secure the right to the writings this court cannot say that Congress was wrong.

*Decree affirmed.*