### KLEIN et al. v. BEACH et al.

(Circuit Court of Appeals, Second Circuit. January 16, 1917.)

#### No. 63.

1. COPYRIGHTS ⊚⇒50—CONTRACT—"PRESENTATION ON STAGE."
   A contract, entered into after motion pictures had become well known, the preamble of which recited that one of the parties had dramatic rights in a novel written by him, and which granted to another party the exclusive right to dramatize the novel for presentation on the stage, conveyed only the right to dramatize for performance by actors in person, not the rights to dramatize for motion picture performance, and did not invalidate a subsequent contract granting the motion picture rights.

   [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 47, 49; Dec. Dig. ⊚⇒50.]

2. COPYRIGHTS ⊚⇒50—CONTRACTS—IMPLIED COVENANCE.
   That contract, having been executed after motion picture presentations were known, there is no implied covenant against granting rights to dramatize for motion pictures to another, to the detriment of the rights granted by the contract.

   [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 47, 49; Dec. Dig. ⊚⇒50.]

3. COPYRIGHTS ⊚⇒50—CONTRACTS—CONSTRUCTION—REVERSION.
   A subsequent provision of the contract, which provided that the right therein granted to a producer, who produced the dramatized version on the stage, should revert to the author and dramatist on certain conditions, does not enlarge the rights of the dramatist.

   [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 47, 49; Dec. Dig. ⊚⇒50.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Philip Klein, as executor, and Lilian Klein, as executrix, of the last will and testament of Charles Klein, deceased, against Rex Beach and the Selig Polyscope Company, Incorporated. From a decree

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dismissing the complaint as against defendant Selig Polyscope Company, Incorporated (232 Fed. 240), complainants appeal. Affirmed.

The decree below dismissed the complaint as against the defendant Selig Polyscope Company, Incorporated, on motion. The plaintiff, who held rights from the defendant Beach under a contract set forth in the opinion below, asked to enjoin Beach and the defendant Selig Polyscope Company, Incorporated, from producing a motion picture play under a subsequent grant from Beach to the Selig Polyscope Company, Incorporated. The District Judge held that Beach's grant to Klein under the contract in question did not cover motion picture rights and that the subsequent grant therefore prevailed.

Ernst & Cane, of New York City (Bernard M. L. Ernst, Melville H. Cane, and Emil Breitenfeld, all of New York City, of counsel), for appellants.

David L. Podell, of New York City, for appellee.

Weadock & Miner, of New York City, for defendant Beach.

Before COXE, and WARD, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The turning point in this case is the scope of the grant, whether by its terms it conferred upon Klein dramatic rights in the larger sense, including presentation, not only by living actors, but also by motion pictures, or whether it was limited to "the stage" proper. The actual words of grant are these:

"The sole and exclusive right to dramatize the said book for presentation on the stage."

The plaintiff insists, in view of Kalem Co. v. Harper, 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285, and Frohman v. Fitch, 164 App. Div. 232, 149 N. Y. Supp. 633, that dramatic rights include motion picture rights. If used alone, that is doubtless true, especially if the contract antedate the commercial use of motion pictures. [2] Yet Judge Hough, in Harper v. Klaw (D. C.) 232 Fed. 609, held on a contract dated in 1899 that the words, "the exclusive right of producing such dramatic version on the stage," did not give to the grantee any motion picture rights, although it is true he also held that such a grant raised by implication a negative covenant against destroying the effect of such a grant by motion pictures. That decision would avail the plaintiff here, if the date of this contract had been so early; it will hardly serve at the end of November, 1911, long after motion pictures had become common, and the distinction between them and the stage proper had for all purposes become well fixed. There is no basis for an implied negative covenant, because the situation has not changed since the contract was made, so as to create an unexpected situation, if the terms be strictly interpreted.

We start, therefore, with a grant prima facie of "stage" rights only. In the preamble of the contract the distinction is already indicated between "stage" rights and general dramatic rights; thus, Beach is recited as having "dramatic rights" in the novel, while Klein is only "to drama-

tize the said book for presentation on the stage," which is to result in a "play," the exclusive rights in which are to go to the Authors' Producing Company. The grant follows the scheme of the preamble. Beach's grant to Klein is what we have quoted; Beach and Klein's grant to the Authors' Producing Company is an exclusive license to produce this "play" on the stage. The word "play" is specifically defined as covering all the results of the exercise of Klein's dramatic rights, and as the Authors' Producing Company has sole license to produce the play on "the stage" (the very word used to limit Klein's rights), it follows that the Authors' Producing Company's license is as broad as Klein's right. Nobody asserts that the Authors' Producing Company got any license to produce motion pictures, if Klein had made such a scenario. The context puts that question beyond any doubt.

[3] Some point is made of the clauses securing the reversion of the Authors' Producing Company's rights to Klein and Beach, but it only serves to help the defendants. No rights in reversion from the Authors' Producing Company can give Klein any motion picture rights, if by hypothesis the Authors' Producing Company's rights are limited to "stage" production proper. On the contrary, such reversion was perhaps thought necessary to revest in Klein and Beach any rights of production whatever, because the grant to the Authors' Producing Company was as broad as any rights created by the contract. In any case the reversion enlarges nothing.

In general it is quite clear that this was the pervading purpose of the parties. Klein was to make a play out of the book, and the Authors' Producing Company was to produce it; if they failed, Klein and Beach might try it together. There is no intimation that Klein should have further rights to make, not a play, but a motion picture scenario. Such a scenario is hardly a "play" for "presentation on the stage." We have this language to construe at a time when the different requirements of "screen" and "stage" were well understood, and with them the need of writing two quite separate kinds of dramatization. We see no reason in the face of that situation to suppose that the language was used out of its natural meaning, or in disregard of a well-established convention which was applicable. Hence we confine the contract to the enterprise before the parties and to such subsequent ventures as the reversions might enable Klein and Beach to undertake.

Therefore we find that there was no implied covenant, and that the grant is limited. As Beach has not appealed, we do not wish to be understood as holding that the complaint states a cause of equity against him.

Decree affirmed, with costs.