## JEROME H. REMICK & CO. v. AMERICAN AUTOMOBILE ACCESSORIES CO.

(District Court, S. D. Ohio, W. D. April 23, 1924.)

No. 341.

1. Copyrights ⬥53—Broadcasting copyrighted musical composition by radio held not "public performance."

Broadcasting by radio of a copyrighted musical composition *held* not a "public performance for profit," within Act March 4, 1909, § 25, as amended by Act Aug. 24, 1912 (Comp. St. § 9546), for, in order to constitute a "public performance," it is essential that there be an assemblage of persons congregated to hear that which transpires at the place of amusement; hence such broadcasting cannot be restrained by injunction.

2. Copyrights ⬥1—Protection wholly statutory.

The protection given to copyrights is wholly statutory.

3. Copyrights ⬥2—Act fixing minimum recovery strictly construed.

Act March 4, 1909, § 25, as amended by Act Aug. 24, 1912 (Comp. St. § 9546), fixing minimum recovery against one giving unauthorized public performance of copyrighted composition, should be strictly construed.

4. Copyrights ⬥2—Protection should not be extended beyond express language of statute.

While statutes relating to copyright should be given a fair and reasonable construction, with view of protecting author, this protection should not be extended beyond the express statutory language nor should a property right be created which was clearly not within the mind of Congress when the act was passed.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Statutes ⚖188—Construed according to natural import of words used.**

In determining intent of Congress as expressed in an act, court must read enactment according to natural import of its words, and, if they are unambiguous, there is no room for construction, nor can the court speculate as to what Congress might have done, or might have intended, had the matter been specifically brought to its attention.

**6. Statutes ⚖181(1)—No intent not expressed in words.**

There can be no intent not expressed in words of statute.

**7. Copyrights ⚖2—Purpose of amendment to act stated.**

Purpose of amendment of August 24, 1912, to the Copyright Act (Comp. St. § 9546), was to put musical compositions on the footing of dramatic compositions, so as to prohibit their public performance.

In Equity. Suit by Jerome H. Remick & Co. against the American Automobile Accessories Company. On motion to dismiss complaint. Motion granted.

Allen & Allen, of Cincinnati, Ohio, for the motion.

John W. Weinig and Peck, Shaffer & Williams, all of Cincinnati, Ohio, opposed.

HICKENLOOPER, District Judge. [1] This matter comes on upon motion to dismiss the bill of complaint. The defendant is a manufacturer of radio receiving sets and parts, and as a part of its business maintains and operates a radio broadcasting station for the transmission through space of intelligence and music. Such radio broadcasting station is undoubtedly maintained for the purpose of stimulating interest on the part of the public, for the purpose of advertising the receiving sets and instruments of defendant's manufacture, and for the purpose of affording the owners of crystal and other sets of lesser range and power the opportunity of converting radio frequency waves produced by high-tension alternating electric current into audio frequency of direct current, and thus producing a reproduction of the sounds broadcast, by means of ear phones or loud speakers, in the home. It must be kept in mind, also, that broadcasting stations are maintained throughout the United States by those who have no direct connection with the manufacture or sale of radio equipment, solely for the advertising value of such broadcasting stations. A notable example of this is the station maintained by the United States Playing Card Company in Cincinnati; other examples are those stations maintained by newspapers at various points.

The complainant is the owner of the copyrighted song entitled "Dreamy Melody." On or about October 22, 1923, between the hours of 9 and 10 p. m., the defendant is alleged to have caused the rendition of this composition, "Dreamy Melody," by means of singing and an orchestra, to be broadcast from its station in the city of Cincinnati. This act is alleged to have been a public performance for profit of the copyrighted musical composition, and the present action is to enjoin similar broadcasting of complainant's composition and to recover damages and profits under the Copyright Act (Comp. St. § 9517 et seq.).

[2] As was said in the case of White-Smith Music Co. v. Apollo Co., 209 U. S. 1, 15, 28 Sup. Ct. 319, 322 (52 L. Ed. 655, 14 Ann. Cas. 628):

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"In the last analysis this case turns upon the construction of a statute, for it is perfectly well settled that the protection given to copyrights in this country is wholly statutory."

By Act March 4, 1909, c. 320, § 1, 35 Stat. 1075 (U. S. Comp. Stat. § 9517), any person entitled thereto, upon compliance with the provisions of the Copyright Act, is given the exclusive right "to perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit." By the same act, as amended August 24, 1912 (37 Stat. 489, U. S. Comp. Stat. 1918, § 9546), an infringer is made liable to an injunction restraining such infringement, and to pay to the copyright proprietor such damages as the copyright proprietor may have suffered, due to infringement, as well as all the profits which the infringer shall have made from such infringement, or, we assume, in the absence of proof of profits or damages, arbitrary fixed damages, but not less than $250. This minimum is claimed in the instant case.

[3] Plaintiff's rights being entirely dependent upon the statute, and the recovery sought being an arbitrary penal sum, not in any sense dependent upon proof of actual profits or damages to an equivalent amount, we are inclined to the opinion that the statute should be subjected to strict construction, notwithstanding the provision of the section covering infringement that such arbitrary minimum recovery "shall not be regarded as a penalty." As to the earlier form of this section, wherein it was provided, as in the present form, that the infringer should pay $1 for every infringing copy of the works enumerated in section 5 of the act, it has been repeatedly held by the Supreme Court that litigants are bound by the language of the act, and that the infringing copies must be found in the actual possession of the defendant. See Bolles v. Outing Co., 175 U. S. 262, 268, 20 Sup. Ct. 94, 44 L. Ed. 156, approved Werckmeister v. American Tobacco Co., 207 U. S. 375, 382, 28 Sup. Ct. 124, 52 L. Ed. 254. This is but the equivalent of holding that, in order to justify recovery, the complainant must bring himself within the natural, and not a forced, construction of the act, and within the clear intent and purpose of the Copyright Act.

[4] The same rule of construction is illustrated by the case of White-Smith Co. v. Apollo Co., supra, in which it was held that a perforated player piano roll was not a copy of a musical composition within the protection of the Copyright Act. While these statutes "should be given a fair and reasonable construction," with a view to protecting the author in such manner that he may have the benefit of the property right conferred for a limited term of years (American Tobacco Co. v. Werckmeister, 207 U. S. 284, 291, 28 Sup. Ct. 72, 52 L. Ed. 208, 12 Ann. Cas. 595), it is clear that this protection should not be extended beyond the express language of the statute, nor a property right created which was clearly not within the mind of Congress when the act was passed.

[5, 6] And in determining this intent of Congress, as expressed in the act, it is the duty of the courts to read the enactment "according to the natural import of the words used," and, if the language used by Congress is unambiguous, there is no room for construction, nor

can we speculate as to what Congress might have done, or might have intended, had the matter been specifically brought to its attention. As expressed by Mr. Sutherland in his work on Statutory Construction, "there can be no intent of a statute not expressed in its words." 2 Lewis' Sutherland, Statutory Construction (2d Ed.) 745. See, also, Treat v. White, 181 U. S. 264, 267, 21 Sup. Ct. 611, 45 L. Ed. 853; Dewey v. United States, 178 U. S. 510, 521, 20 Sup. Ct. 981, 44 L. Ed. 1170.

The unwillingness of the courts to extend the language of the act' beyond its express provisions is further exemplified by the case of Thompson v. Hubbard, 131 U. S. 123, 151, 9 Sup. Ct. 710, 720, 33 L. Ed. 76, in which case it is held that the failure to print notice of copyright prevents any right of action for infringement from coming into existence, even as against him who originally secured such copyright. Here the court say:

"This right of action, as well as the copyright itself, is wholly statutory, and the means of securing any right of action in Hubbard are only those prescribed by Congress."

The question, therefore, resolves itself into a determination whether the broadcasting of a rendition of complainant's musical composition was a performance of it publicly for profit in the common, ordinary, and reasonable acceptation of this phrase. We are familiar with the holding of the United States District Court for the District of New Jersey in the case of M. Witmark & Sons v. L. Bamberger & Co., 291 Fed. 776, in which the court concluded that the rendition of a song for broadcasting purposes was a public performance of the musical composition, and that such performance was unquestionably for profit within the decision of Herbert v. Shanley Co., 242 U. S. 591, 37 Sup. Ct. 232, 61 L. Ed. 511. While, considered seriatim, this opinion might be said to arrive at a logical conclusion, viz. that the singing was a performance, that it was public in the sense that those could listen who cared to and were equipped with receiving instruments, and that it was for profit because of its advertising value, and therefore every element of a public performance for profit had been disclosed, we have been unable to bring ourself to the conclusion that such broadcasting was within what Congress had in mind when using the language "perform publicly for profit."

Funk & Wagnalls' Standard Dictionary (1911) defines a performance:

"(2) Specifically a representation on the stage or before an audience or spectators; an exhibition of feats; any entertainment at a place of amusement; as, two performances daily."

While not found in other standard dictionaries, it is just this idea which we think Congress had in mind in passing the enactment in its present form. In order to constitute a public performance in the sense in which we think Congress intended the words, it is absolutely essential that there be an assemblage of persons—an audience congregated for the purpose of hearing that which transpires at the place of amusement. This is in no wise contrary to the case of Herbert v. Shanley Co., supra, for there was there such audience congregated

in a popular restaurant in New York, and it could make little difference whether the patrons paid for their entertainment in the form of an admission fee, a cover charge, or as an addition to the menu prices.

Nor is our opinion in conflict with the case of Kalem Co. v. Harper Bros., 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285, which simply holds that a copyrighted work may be infringed by dramatization through the use of moving pictures. We simply feel that the rendition of a copyrighted piece of music in the studio of a broadcasting station, where the public are not admitted and cannot come, but where the sound waves are converted into radio frequency waves and thus transmitted over thousands of miles of space, to be at last reconverted into sound waves in the homes of the owners of receiving sets, is no more a public performance in the studio, within the intent of Congress, than the perforated music roll, which enables the reproduction of copyrighted music by one without musical education, is a copy of such music. A private performance for profit is not within the act, nor is a public performance not for profit. All contemplate an audience which may hear the rendition itself through the transmission of sound waves, and not merely a reproduction of the sound by means of mechanical device and electro-magnetic waves in ether.

[7] A parody upon the singing of a copyrighted song has been held not to infringe the copyright. Bloom & Hamlin v. Nixon (C. C.) 125 Fed. 977. And by much the same token we think that the rendition of a song in the seclusion of a broadcasting studio and its subsequent reproduction by a radio receiving set, where the auditors are scattered over a vast territory, is not a public performance within the intendment of Congress in enacting the Copyright Law. The auditor, "listening in" at Indianapolis, Cleveland, or Chicago, would be surprised to learn that he had, that evening, attended a public performance in Cincinnati. This illustrates the incongruity of such a holding.

"The purpose of the amendment evidently was to put musical compositions on the footing of dramatic compositions, so as to prohibit their public performance." White-Smith Music Co. v. Apollo Co., supra.

And the close association in the act of provisions relating to the drama and to public performance of musical compositions would seem to demonstrate conclusively that Congress had in mind a place of such performance to which the public was admitted for the entertainment there of the senses, a congregating together for this purpose, and the payment, in one way or another, of compensation for the entertainment provided. This would seem to be the whole extent of the exclusive privilege or property right granted, and the effect of the act should not be extended beyond such clear and unambiguous import of the words used.

The motion to dismiss must therefore, in our opinion, be granted.