Marshall, C. J.
 

 Richards was indicted under Section 13049, General Code. The pertinent language of the indictment is as follows:
 

 “That "Walter K. Richards, late of the county of Hancock, aforesaid, on the twenty-fourth day of December in the year of our Lord one thousand nine hundred and twenty-two, at the county of Hancock, aforesaid, and state of Ohio, the said day then and there being the first day of the week, commonly called Sunday, did unlawfully exhibit to the public, with charges for admittance thereto, a theatrical performance, to wit, a moving picture show, in a certain building, then and there being,” etc.
 

 The defendant demurred to the indictment, and the demurrer was overruled. Thereupon he pleaded guilty and attempted to enter a special plea, the journal entry being in the following language:
 

 “Thereupon the defendant entered a plea of guilty to the charge of exhibiting a motion picture show with charges for admission thereto on the day and at the place charged in the indictment.”
 

 Upon such plea, a fine of $100 was imposed. Thereupon a motion was made in arrest of judgment on the ground that the indictment does not charge an offense, and on the further ground that the plea as entered is not sufficient in law to justify the sentence, and that the judgment is therefore contrary to law.
 

 
 *313
 
 The criminal procedure of Ohio does not recognize a special plea of the character which was entered in this case, and it is clearly contemplated by the statutes that the plea must either be that of guilty or not guilty. This special plea must therefore be treated as either the one or the other. If it should be held that the special plea as entered does not admit the material allegations of the indictment, then it should be held to constitute a plea of not guilty. If on the other hand the material allegations of the indictment are not controverted by the special plea, then it must be held to amount to a plea of guilty of the offense charged. The indictment charges the exhibition of a “theatrical performance” which constitutes an offense under the statute and proceeds further to specify the particular kind of performance, viz., a moving picture show. The special plea admits the exhibition of a motion picture show in a public building on Sunday, with charges for admission, and it therefore only remains to be determined whether a motion picture show at such time and place amounts to a theatrical performance. If a motion picture show is a theatrical performance, then the special plea of guilty renders the defendant amenable to the indictment. The whole case therefore turns upon the proper interpretation of Section 13049, General Code, the pertinent portions of which are as follows:
 

 “Whoever on Sunday, participates in or exhibits to the public with or without charge for admittance, in a building, room, ground, garden or other place, a theatrical or dramatic performance *
 
 * *
 
 on complaint within twenty days thereafter, shall
 
 *314
 
 be fined not more than one hundred dollars or imprisoned in jail not more than six months, or both.”
 

 Concretely stated, the legal question involved is whether a motion picture exhibit is a theatrical performance. This section is a penal statute and should therefore be strictly construed. The rule of strict construction, however, does not require that any word or phrase employed therein should be given a definition other than that commonly used and employed or a different sense from that in which it is commonly used and understood. That is to say, a term employed in a penal statute should not be given a definition different from that applied to the same term employed in a civil statute.
 

 This court has never considered the status of a moving picture show, and has never determined whether or not it constitutes a theatrical performance.
 

 Section 13049 was enacted before moving picture shows had become a part of our public entertainment. Such shows were, not even in existence at the time of the original enactment of that section, but they had become quite numerous at the last amendment thereof, on April '26, 1911. On that date the section was amended so as ,to permit base ball playing in the afternoon, and it is argued that, inasmuch as the General Assembly did not at that time see fit to definitely define the status of a moving picture show, it must be assumed that the Legislature did not intend to classify such shows as among the prohibited Sunday amusements; that is to say, that, since moving picture shows could not have been considered at the time of the original enactment of that section, but that
 
 *315
 
 they could very properly have been considered at the time of the amendment in 1911, it will be presumed that the Legislature in fact gave consideration to that subject and concluded not to include moving picture shows within the prohibited classes of amusements. The fallacy of that theory consists in the fact that all classes of shows and exhibitions and all theatrical and dramatic performances were already prohibited, and that a motion picture show merely constitutes a new species of one or another genus coming clearly within the inhibitions of the section. We are therefore governed by the rule of interpretation laid down in the syllabus of the case of
 
 State
 
 v.
 
 Cleveland,
 
 83 Ohio St. 61, 93 N. E. 467, 21 Ann. Cas. 1284, which we quote:
 

 “A
 
 statute may include by inference a case not originally contemplated when it deals with a genus within which a new species is brought. Thus a statute making it unlawful to willfully throw a stone at a railroad car includes an interurban or traction railway car, although such cars were not known or in use at the time the statute was enacted.”
 

 We are therefore not diverted from the original inquiry as to whether a motion picture show is a theatrical performance.
 

 This court never having defined the term; we are privileged to turn to the definitions' given by the lexicographers. Without quoting at length from Webster or the Century Dictionary, both of whicli are recognized as standard authorities, it is sufficient to say that those authorities clearly define a theatrical performance as including any scenic representation exhibited in a theater or other public
 
 *316
 
 building for purposes of public entertainment. A careful survey and analysis of the definition make the term include any artificial portrayal for public entertainment of that which is real or genuine. In order to be a. performance it must be a portrayal of action, but the rapid succession of the images in sequence supplies the action in vivid realism. The action is so real and vivid and so true, and the portrayal of the human emotions and human passions is so realistic that such performances are capable of arousing like emotions and passions in the spectators. That this is true is proven by the fact that a public censorship is provided.
 

 This conviction is contested on behalf of motion picture operators and producers, but neither of those classes could afford to deny the realism of motion pictures. It is impossible to admit their realism without admitting that they are properly classified as theatrical performances. Having employed the word “theatrical” in the statute it was unnecessary to employ the word “dramatic” because the former includes the latter. The use of both words can only be accounted for on the theory that a broad application was intended and that the other branches of the government should not be permitted to make the mistake of limiting the prohibition to dramatic performances.
 

 It is the view of counsel that there can be no theatrical performance without living actors actually appearing before the spectators, and that a series of pictures vividly portraying the movements of the actors, projected upon a screen, however true and realistic, is neither a performance nor a theatrical. It is quite certain that some re
 
 *317
 
 spectable judicial authority is found for that view. We are of the opinion, however, that the greater weight of authority is to the contrary.
 

 We shall not attempt, within the limits of this opinion, to review the authorities on this subject pro and con, but will confine the discussion to only a few eáses.
 

 In the case of
 
 State
 
 v.
 
 Morris,
 
 decided by the Court of General Sessions of the state of Delaware, reported 1 Boyce (Del.) 330, 76 Atl. 479, that court had under consideration the construction of a statute which provided that a building where a theatrical performance is exhibited shall be deemed to be a circus, and that any person operating such a building must procure a license, and it was held that a person maintaining a moving picture show would be required to procure a license. In the syllabus of that case it was stated that the word ‘‘theatrical‘ means “a theatre or scenic representation, resembling the manner of dramatic performers.”
 

 In the case of
 
 Boer War Spectacle
 
 v.
 
 Commonwealth,
 
 107 Va. 653, 60 S. E. 85, it was held that a panoramic reproduction of the battles of the Boer War, with scenery of the war country and military and other equipments like those seen in the battle portrayed, but which was not a motion picture, was nevertheless to be classed as a theatrical performance.
 

 In
 
 Kalem Co.
 
 v.
 
 Harper Bros.,
 
 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A 1285, it was held by the Supreme Court of the United States that a copyright can be infringed by the public exhibition of moving pictures of the incidents of
 
 *318
 
 a copyrighted book, and that a moving picture depicting the principal scenes of .the work of an author, so as to tell the story, is a dramatization of such work. In that case the issue was as to whether a moving picture of the scenes and descriptions of “Ben Hur” constituted a dramatization. That was not a criminal case, but on the principle that the same definition would apply in civil and criminal statutes, that authority becomes in point, and, having been decided by the Supreme Court of the United States, is entitled to great weight.
 

 While this question has never been decided by this court the question has previously been presented to the court upon a motion to certify a case which was decided by the Court of Appeals for Boss county, on February 29, 1916, and this court overruled the motion to certify. Without indulging any presumptions as to what was in the mind of this court in overruling the motion to certify, the fact remains that the charge in that case was a violation of Section 13049 in exhibiting a motion picture on Sunday, and that it was charged as a theatrical performance, and no other question was before this court. That case is reported in
 
 Myers
 
 v.
 
 State,
 
 5 Ohio App. 156.
 

 The same proposition was before the Court of Appeals of Medina county, and a conviction was sustained by that court; the cause having been decided October 24, 1917. That case is reported in
 
 Standen
 
 v.
 
 State,
 
 8 Ohio App. 168.
 

 We refer to those decisions because there have been several sessions of the Legislature since those convictions were sustained, and the Legisla
 
 *319
 
 ture has not seen fit to express a disapproval of those decisions by amending the statute.
 

 In this case there was a plea of guilty and no evidence introduced, and we may therefore properly indulge almost any presumption as to the character of the performance. It may or may not have been a dramatic performance. It may have been a highly sensational performance, and therefore of that irritating character referred to in
 
 United States
 
 v.
 
 Wiltberger,
 
 5 Wheat. 76, 96, 5 L. Ed. 37.
 

 We are of the opinion that a motion picture show is a theatrical performance, that Section 13049 is valid, and that upon the admitted facts of this case, as shown by the journal entry, there was a violation of (Section 13049, and that this record contains no error, and that the judgments of the lower courts should be affirmed.
 

 Judgment affirmed.
 

 Matthias, Day and Ahlen, JJ., concur.
 

 Wanamaker, J., not participating.