Fuld, J.
Charles Fulton Oursler wrote ‘ ‘ The Greatest Story Ever Told” and copyrighted the work. Upon his death in 1952, the copyright passed to his estate. Henry Denker collaborated with Oursler and, after the latter’s death, with his widow in the writing of certain radio and television scripts, stage plays and motion pictures, all involving the same subject matter and bearing the same title as the original work. Some of the copyrights were owned jointly by Denker and Fulton Oursler, and others by Denker and Mrs. Oursler.
In June of 1954, Denker, Mrs. Oursler (who has since died) and Fulton Oursler’s Estate entered into an agreement with Twentieth Century-Fox, pursuant to which they granted the latter exclusive motion picture and other rights in and to the above-mentioned properties. In return, Fox agreed that Denker and the Ourslers (Mrs. Oursler and the Estate of Fulton Oursler) were to receive 11% of the net profits derived from *344 the picture. In addition, the agreement called for advance payments of $110,000 over a three-year period, and that amount has been paid by Fox.
Although the contract did not in so many words provide that Fox should finish or produce the picture by any particular date, it did contain, in its “ Twelfth” paragraph, the following language : ‘1 Purchaser contemplates that pre-production work on a motion picture based on the Property should be commenced within one (1) year after the date hereof and that photography of such motion picture should be completed within five (5) years from the date hereof. It is expressly understood, however, that Purchaser shall have sole and complete control over the exercise of all rights acquired by Purchaser under this agreement * * * and all matters and things in connection therewith shall be determined by or with the authority of Purchaser in its absolute and sole discretion.” In September, 1959, Denker, claiming that Fox had materially breached the contract by not producing the picture within five years, brought the present suit. The complaint contains two causes of action, one for rescission and the other for damages. The Oursler Estates are joined as defendants on the ground that they refused the plaintiff’s request to associate themselves with him in bringing suit.
After answers had been served, Fox moved, pursuant to rules 106 and 112 of the Rules of Civil Practice, for dismissal of both causes of action and the executors of the Oursler Estates joined in such application.
The court at Special Term denied the motion in its entirety; the Appellate Division modified the resulting order and directed dismissal of the first cause of action, the one for rescission. Since it is the plaintiff alone who appeals from the Appellate Division’s disposition, we are not, of course, concerned with the cause of action for damages.
There is no doubt that the plaintiff and the Oursler Estates are co-owners of copyrighted material and, as such, are to be considered tenants in common. (See Noble v. Van Nostrand Co., 128 U S P Q 100, 103 et seq.; see, also, Amdur, Copyright Law and Practice [1936], p. 616.) Either Denker or one óf the Ourslers had the power, acting alone, to grant nonexclusive motion picture rights to third persons (see Nillson v. Lawrence, 148 App. Div. 678; Klein v. Beach, 232 F. 240, *345 247, affd. 239 F. 108 [2d Cir.]; see, also, Kupferman, Copyright— Co-Owners, 19 St. Johns L. Rev. 95, 100-101), but it is clear that exclusive rights to a copyright may be effected only by a grant in which all of the co-owners join. (Cf. Taubman, Joint Authorship and Co-Ownership in American Copyright Law, 31 N. Y. U. L. Rev. 1246,1258.)
In the present case, as already remarked, all three co-owners joined in granting exclusive rights to Fox. Even assuming, therefore, that the agreement obligated the latter to produce the motion picture within a specified time and that it had breached its obligation, the plaintiff alone would not be able to procure a rescission of the contract. The applicable rule has been well stated by Black in his work on Rescission: “ where several persons are arrayed on the same side of a transaction— as joint contractors, joint purchasers, or joint vendors * * * one of them alone cannot repudiate or terminate the contract, or obtain its rescission, without the consent or against the objections of the others. Thus one joint and several obligor cannot rescind an agreement whereby both are discharged from liability on the obligation, and thereby bind his co-obligor, if the latter does not consent to the rescission.” (3 Black, Rescission and Cancellation [2d ed., 1929], p. 1362; see, also, Sun Oil Co. v. Oswell, 258 Ala. 326; La Fargue v. La Fargue, 210 Ark. 97; Union Gas & Oil Co. v. Gillem, 212 Ky. 293, 298; Merriman v. Norman, 56 Tenn. 269, 274-275.)
Nor may the plaintiff succeed in defeating the motion to dismiss the complaint on the theory that he is entitled to a rescission as to his interest alone. If he were permitted to have a partial rescission, he would reacquire (what he had before the contract was executed) a right to grant a nonexclusive license to produce the picture. This would mean that Fox would have, in place of the exclusive license granted by Denker and the Ourslers, only a nonexclusive license. Quite obviously, if this were to be allowed, the position of both Fox and the Ourslers would be significantly altered. In the production of motion pictures, novelty of approach and presentation are of vital importance. Since “ The Greatest Story Ever Told” is based on the Bible, its factual content is in the public domain and the primary commercial value of the film rights lies in the treatment of the biblical material and in the title of the copy *346 righted work. It is reasonable to assume that Fox would not have made the substantial investment necessary to produce and promote such a picture if another producer could lawfully release a picture dealing with the same subject and bearing an identical title.
In sum, then, since it required the joint action of Denker and the Ourslers to effect a grant of the exclusive motion picture rights, it would require similiar joint action to undo what was done and obtain rescission of the contract.
One further point deserves mention. In his brief, the plaintiff charges that the Ourslers are guilty of bad faith in refusing to join with him in bringing this action and that, even if he would not ordinarily be permitted to obtain rescission without the assent of the other co-owners of the copyrights, their refusal justifies his proceeding alone. The presence of fraud or bad faith may well enlarge the right of one of several co-parties to a contract to act alone and procure a rescission. However, we need not now concern ourselves with this problem in view of the fact that the complaint before us simply alleges that the Ourslers “ refused ” to accede to the plaintiff’s request that they join with him in bringing the suit. There is no word or suggestion in the complaint of wrongdoing or bad faith on the part of the Ourslers. Since, at the very least, such conduct is a prerequisite to the maintenance of this suit by Denker individually, he necessarily has the burden of pleading and proving it. • (See, e.g., Lent v. New York & Mass. Ry. Co., 130 N. Y. 504, 510; Crossways Apts. Corp. v. Amante, 213 App. Div. 430, 436-438.)
In the view we have taken, it is unnecessary to consider the other arguments advanced by the defendants.
The judgment appealed from should be affirmed, with costs.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Judgment affirmed.